IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

IN RE: Marilyn Jane Coulter aka             BANKRUPTCY NO. 11-11520-DWH
Marilyn Jane Heath

---

Springleaf Financial Services f/k/a American General Financial Services, Inc.     Movant

vs.

Marilyn Jane Coulter aka Marilyn Jane Heath, Debtor and
Alex B. Gates, Trustee                                                       Respondents

## MOTION FOR RELIEF FROM STAY AND FOR OTHER RELIEF

Springleaf Financial Services f/k/a American General Financial Services, Inc. (hereinafter "Springleaf Financial") brings this motion for relief from stay and for other relief as follows

1. On or about April 1, 2011, Marilyn Jane Coulter aka Marilyn Jane Heath ("Debtor") filed a petition for bankruptcy pursuant to Chapter 7 of the United States Bankruptcy Code. This Court has jurisdiction over the parties and subject matter to this motion pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 554, 362 and 363. This is a core proceeding pursuant to 28 U.S.C. § 157 (b) (2) (A), (G) and (O).

2. Springleaf Financial is a secured creditor of Debtor and holds a valid, duly perfected security interest in Debtor's certain personal property. Copies of documents supporting the debt and Springleaf Financial's security interest are attached and incorporated herein by reference.

3. As of the date of the filing of the bankruptcy, the payoff balance on Debtor's debt to Springleaf Financial was $4,049.49.

4. According to Debtor's Chapter 7 Statement of Intention, Debtor proposed to avoid the lien, however no motion has been filed.

5. Springleaf Financial has not received adequate protection as required by 11 U.S.C. §§ 361, 362 and 363. Additionally, there is no equity in the property for the benefit of Debtor or the Estate.

WHEREFORE, PREMISES CONSIDERED, Springleaf Financial Services f/k/a American General Financial Services, Inc. requests the Court to terminate the automatic stay of 11 U.S.C. § 362 to allow Springleaf Financial to proceed to enforce its security interest and repossess and liquidate its collateral. Springleaf Financial also requests the Court to order the Trustee to abandon Springleaf Financial's collateral pursuant to 11 U.S.C. § 554 and that the stay provisions of Rule 4001 of the Federal Rules of Bankruptcy Procedure shall not apply to the Court's order. Springleaf Financial requests the Court to grant such other relief as is necessary under the circumstances.

**DATED:** May 26, 2011.

                                                Respectfully submitted,

                                                Springleaf Financial Services f/k/a
                                                American General Financial Services, Inc.

                            BY:    /s/ John S. Simpson
                                      John S. Simpson
                                      Its Attorney

John S. Simpson, MSB No. 8525
Simpson Law Firm, P.A.
P.O. Box 1410
Ridgeland, MS 39158-1410
(601) 957-6600
dhelms@simpsonlawfirm.net

## CERTIFICATE OF SERVICE

I certify that copies of the foregoing documents were served upon the following:

Robert T. Cornelius, Sr., MSB No. 6528
Attorney for Debtor
P.O. Box 59
New Albany, MS 38652
(662) 253-5771
bob@corneliuslawfirm.com

Alex B. Gates
Chapter 7 Trustee
P.O. Box 216
Sumner, MS 38957
(662) 375-8728
agates@ecf.epiqsystems.com

United States Trustee
501 E. Court St., Ste. 6-430
Jackson, MS 39201
(601) 965-5241
USTPRegion05.JA.ECF@usdoj.gov

by electronic notice, on May 26, 2011.

/s/ John S. Simpson
John S. Simpson

# DISCLOSURE STATEMENT

**AMERICAN GENERAL FINANCIAL SERVICES**

| DATE | | ACCOUNT NUMBER 6076 | TYPE OF LOAN (Alpha) 000 |
|---|---|---|---|
| LENDER | NAME AND ADDRESS ("Lender") | LENDER'S TELEPHONE NUMBER 662-895-1291 | |

AMERICAN ... FINANCIAL SERVICES, INC.
CAMP C...
8230 CA... STE 105
OLIVE ...

BORROWER NAME AND ADDRESS ("I", "we")

MARILYN ...
P.O. BOX ...
OLIVE ...

I will read ... Agreement and Disclosure Statement ("Agreement") and all related documents carefully. If I have any questions ... ask them before I sign any of these documents. By signing, I am indicating my agreement to the statement ... terms and conditions contained in the documents I sign.

## TRUTH IN LENDING DISCLOSURES

| PERCENTAGE RATE<br>The cost ... yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | AMOUNT FINANCED<br>The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS<br>The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 28.68 % | $ 1851.33 | $ 3604.00 | $ 5455.33 |

My Payment Schedule will be:

| Number | Amount of Payments | When Payments Are Due |
|---|---|---|
| | $ 199.63 | 01/02/11 |
| | $ 150.42 | monthly beginning 02/02/11 |

*"Amount ... OF PAYMENTS" above, do not include amounts for monthly insurance premiums, if any.

LATE CHARGE: ... if payment is not paid in full within 10 days after its due date, I will be charged 5.00 % of the unpaid amount of the ... not more than $ 5.00 or less than $ N/A

... if ... is not paid in full within ___ days after its due date, I will be charged $ ___ if the entire scheduled payment is $ ___ or less.

PREPAYMENT:
[X] I will not have to pay a penalty or minimum charge.
[ ] I will not get a refund or credit of part of the finance charge.

SECURITY: ... a security interest in:
[ ] Real ...
[ ] Motor Vehicles

| Other Assets Description |
|---|
|  |

ousehold items described on the Personal Property Appraisal Form, which I have signed and which has been delivered to me with this Agreement.

PTION: Someone buying my home, if it secures this loan, may not assume the remainder of this loan on the original terms unless approved by Lender.

ly loan contains a variable-rate feature. Disclosures about the variable-rate feature have been provided to me earlier.

remainder of this Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and ent refunds and penalties, if any.

**ARE NOT REQUIRED TO COMPLETE THIS AGREEMENT MERELY BECAUSE YOU HAVE RECEIVED THESE DISCLOSURES OR SIGNED A LOAN APPLICATION.**

**OTHER DISCLOSURES**

**THIS AGREEMENT IS SUBJECT TO THE FEDERAL ARBITRATION ACT.**

below, I acknowledge receipt of a copy of this Federal Disclosure Statement.

_/s/ Nancy Coulter_

wer                                                                Co-Borrower

**SEE REVERSE SIDE FOR ADDITIONAL DISCLOSURES**

17-10) C.E. Agreement - Non Escrow (1-2)        Page 1

Customer's Name MARILYN COULTER
Account Number ███6076

AMERICAN GENERAL FINANCIAL SERVICES, INC.

## PERSONAL PROPERTY APPRAISAL FORM

(These are the only acceptable items to be used as personal property security. DO NOT USE ANY OTHER ITEMS).
If I/we have selected personal property insurance, the items described in Schedule A and B with a replacement value* are covered by insurance. Business Property or Equipment cannot be included as security.

### SCHEDULE A

| ITEM | SIZE/MODEL | REPLACEMENT* VALUE |
|---|---|---|
| Computer Equipment | HP PAVILLION | 1200 |
| Television (Secondary) | 32" MAGNAVOX TV 1 OF 2 | 800 |
| Computer Equipment | CANNON PIXMA PRINTER | 125 |
| Computer Equipment | DELL PRINTER | 80 |
| Computer Equipment | HP PRINTER | 80 |
| Lawnmower | JOHN DEERE LAWN TRACTOR | 2000 |

(INSURABLE AMOUNT)
SCHEDULE A REPLACEMENT* VALUE TOTAL $ 4285

### SCHEDULE B

Items described in Schedule B are being purchased with the proceeds of this credit transaction or are purchase money collateral retained from a retail contract or revolving credit agreement which is being refinanced. ITEMS WITH A REPLACEMENT VALUE* ARE COVERED by credit personal property insurance I/we have selected. Motorized vehicles cannot be covered, i.e., ATVs, mopeds, etc.

### ITEMS PURCHASED WITH THE PROCEEDS OF THE CREDIT TRANSACTION OR IN WHICH CREDITOR RETAINS A PURCHASE MONEY SECURITY INTEREST

| ITEM | SIZE/MODEL | REPLACEMENT* VALUE |
|---|---|---|
|  |  |  |



(INSURABLE AMOUNT)
SCHEDULE B REPLACEMENT* VALUE TOTAL $_____

### SCHEDULE C

Items described in Schedule C are being purchased with the proceeds of this credit transaction OR are being used as security but CANNOT BE COVERED by any credit personal property insurance.

| ITEM | SIZE/MODEL |
|------|------------|
|      |            |

* Cash Value in TN only.

I (We) hereby affirm that the items listed on this Personal Property Appraisal Form are owned by me (us), are not used in any way in my (our) employment, are not essential for my (our) welfare, and that the total replacement value of insurable goods used as security on this credit transaction is $ __4285__

SIGNED _____ BORROWER

_Connie Baker_
WITNESS

NOVEMBER 18, 2010
DATE (MONTH DAY, YEAR)

JOINT BORROWER

JOINT OWNER (NOT BORROWER)

SR0271 (04-16-08) Personal Property Appraisal

**DATE OF LOAN.** __11/18/10__ (the date the Finance Charge is scheduled to begin to accrue).

**CONTRACT RATE.** _____28.69__ % per year, which is the agreed interest rate. If the "Adjustable Rate Loan" box is checked below, this rate is subject to change as set forth therein.

**PROMISE TO PAY.** For value received, I promise to pay to the order of the Lender all amounts due under this Agreement in accordance with the Payment Schedule set forth in the Truth in Lending Disclosure on page 1 of this Agreement, including all Escrow Items as disclosed in the INITIAL ESCROW ACCOUNT DISCLOSURE STATEMENT, if any, and with all other terms of this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full. If the "Adjustable Rate Loan" box is checked below, the payment amounts set forth in the Payment Schedule may change as set forth in this Agreement.

☐ **ADJUSTABLE RATE LOAN.** If this box is checked, I agree that the agreed interest rate I will pay may change on the Due Date of my _____ payment and on that same date every _____ thereafter ("the Change Date"). If there is no corresponding date in any given month, the Change Date will be the last day of the month. (For example, if my rate can change quarterly and my Change Date is January 31, my next Change Date will be April 30.) My interest rate will be based on an index plus a margin. The index is the highest Prime Rate published in The Wall Street Journal's "Money Rates" table. If this index should no longer be available, Lender will choose a comparable replacement index and will inform me of the new index. The Contract Rate and the monthly payment amounts may change as set forth herein.

Prior to each Change Date, Lender will calculate the new agreed interest rate by taking the Index as of 60 days prior to the Change Date and adding a margin of _____ percentage points. Lender will round the resulting figure down to the next lowest one-hundredth of one percent. Lender will then determine the new monthly payment amount necessary to repay my loan in full on the due date for the final payment.

My interest rate will never increase or decrease on any single Change Date by more than _____ percentage points from the agreed rate of interest in effect immediately preceding the Change Date. Any rate change not implemented as a result of this limitation may be carried over to the next Change Date. My interest rate will never increase by more than eight percentage points (for first mortgage loans) or ten percentage points (for subordinate mortgage loans) over the initial Prime Rate, and in no event will ever be greater than _____ %, and will never be less than _____ %.

The new agreed interest rate will be effective as of the Change Date. The new monthly payment will be effective as of the next regularly scheduled due date subsequent to the Change Date. Lender will send me notice of all rate and payment changes as required by law.

**SECURITY AGREEMENT.** If any type of personal property (property other than real estate ("real property")) is disclosed in the "Security" section of the Truth in Lending Disclosures, to secure all amounts due or which become due under this Agreement and my performance of all other terms of this Agreement, I grant Lender a security interest under the Uniform Commercial Code or other applicable law in: (a) the property identified in the "Security" disclosure of the Truth in Lending Disclosures on page 1 of this Agreement; (b) any substitutions or replacements of that property; and (c) the proceeds and products of that property (collectively referred to as the "Collateral"). I also grant Lender a security interest in any unearned premiums from any insurance I have elected and purchased through Lender in connection with this transaction which protects the loan account or Collateral (including, but not limited to, voluntary credit and personal property insurance). Lender's security interest shall remain in effect until I have paid in full all amounts due under this Agreement and subject to any modifications, renewals, extensions, and future advances thereof. Notwithstanding any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. I authorize Lender to sign and file financing statements covering the Collateral without my signature. I authorize Lender to file a copy of this Agreement as a financing statement when appropriate. If real property is disclosed in the "Security" section of the Truth in Lending Disclosures, I am signing a mortgage or deed of trust covering the real property at the same time that I am signing this Agreement.

**JOINT BORROWERS.** If more than one Borrower is named above, all Borrowers agree that we are jointly and severally liable and that Lender may enforce this Agreement against all or any of us, but not in a combined amount exceeding the amount due.

**CO-MAKERS (also referred to as CO-SIGNER(S)).** If I am signing this Agreement as a Co-Maker, I understand that I am equally responsible with the Borrower(s). I agree that Lender may pursue me or any Maker if this Agreement is in default. Unless required by law, Lender will not notify me if: (a) this loan is in default; (b) Lender agrees to accept different payment terms; (c) Lender releases any security interest; or (d) Lender releases any Borrower(s) or Maker(s).

**CREDIT INFORMATION.** I authorize Lender to investigate my creditworthiness, including to obtain my credit report at anytime, as permitted by law.

**ESCROW PAYMENTS.** I shall pay to Lender on or before the Payment Due Date, in addition to the Minimum Payments shown on each of my Monthly Statements, if any, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; and (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all Required Insurance addressed below. These items are called "Escrow Items" ("Escrow Items"). I agree to pay Funds for Escrow Items each and every month, until all sums that I owe Lender under this Agreement, or the Security Instrument are paid in full, my Account is terminated, and Lender releases or discharges the Security Instrument.

At origination or at any time during the term of the Agreement, Lender in its sole discretion, may require that any expense associated with owning the Property be escrowed by me, such expenses may include, but are not limited to, Community Association Dues, Fees, or Assessments, if any, and such dues, fees or assessments shall be each its own Escrow Item. I shall promptly furnish to Lender all notices of amounts to be paid under this Section.

Lender, in its sole discretion, may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments

**ENTIRE AGREEMENT.** This Agreement, which includes the Insurance Disclosure Summary, if one was provided to me, contains the entire agreement of the parties with regard to the subject matter hereof, and no party hereto has relied upon any representations except such as are specifically set forth herein. This Agreement cannot be modified in any respect except by an amendment in writing signed by the parties. All notices under this Agreement shall be in writing and directed to the parties at the addresses shown at the beginning of this Agreement or to such other address as a party may specify by notice given in accordance with this paragraph.

**IF I DEFAULT AND THIS LOAN IS SECURED BY A DEED OF TRUST ON MY HOME, I MAY LOSE MY HOME.**

BY SIGNING BELOW, I SIGNIFY THAT I HAVE READ, UNDERSTOOD, AND AGREED TO THE TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING THE ARBITRATION AGREEMENT THAT PROVIDES, AMONG OTHER THINGS, THAT EITHER LENDER OR I MAY REQUIRE THAT CERTAIN DISPUTES BETWEEN US BE SUBMITTED TO BINDING ARBITRATION. IF LENDER OR I ELECT TO USE ARBITRATION, WE AGREE THAT WE WILL HAVE THEREBY WAIVED OUR RIGHTS TO TRIAL BY JURY OR JUDGE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THAT THE DISPUTE WILL BE DECIDED BY AN ARBITRATOR, AND THAT THE DECISION OF THE ARBITRATOR WILL BE FINAL. ARBITRATION WILL BE CONDUCTED PURSUANT TO THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION, EXCEPT AS OTHERWISE PROVIDED IN THE ARBITRATION AGREEMENT.

UNARBT (07-16-10)

I agree that, on or before the date on page 1 hereof ("the Date of Agreement"), I have received and read a fully completed, legible copy of this Agreement, the Truth in Lending Insurance Disclosures, the Privacy Notice, the Personal Property Appraisal Form (if applicable), and two copies of a Notice of Right to Cancel (if applicable) and agree to be bound thereby.

x _Connie Baker_  
Witness

x _Marilyn Coulter_ _____ L.S.  
Borrower   MARILYN COULTER

x _____  
Witness

x _____ L.S.  
Co-Borrower

x _____ L.S.  
Co-Maker  
Print Name: _____

x _____ L.S.  
Co-Maker  
Print Name: _____

102277328

**Mississippi - UCC1 FINANCING STATEMENT**

A. NAME & PHONE OF CONTACT AT FILER:
CONNIE BAKER 662-895-1291

B. SEND ACKNOWLEDGMENT TO: (Name and Address)
AMERICAN GENERAL FINANCE
8230 CAMP CREEK BLVD STE 105
OLIVE BRANCH MS 38654

1. DEBTOR'S EXACT FULL LEGAL NAME

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| COULTER | MARILYN | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. BOX 1003 | OLIVE BRANCH | MS | 38654 | 17 |

3. SECURED PARTY'S NAME

3a. ORGANIZATION'S NAME: AMERICAN GENERAL FINANCE

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8230 CAMP CREEK BLVD STE 105 | OLIVE BRANCH | MS | 38654 | 17 |

COMPUTER EQUIPMENT
32" MAGNAVOX
CANNON PIXMA PRINTER
DELL PRINTER
HP COMPUTER
JOHN DEERE LAWN TRACTOR

8. OPTIONAL FILER REFERENCE DATA
M.COULTER 6076

FILING OFFICE COPY — MISSISSIPPI UCC FINANCING STATEMENT (FORM UCC1) (REV. 12/10/01)